# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JASON WILLIAMS,
Plaintiff

vs

JEFF BOWLING,
Defendant.

Case No. 1:07-cv-146

Barrett, J.
Hogan, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an inmate at the Noble Correctional Institution in Caldwell, Ohio, brings this action under 42 U.S.C. § 1983 alleging a violation of his constitutional rights. The defendant in this action is Jeff Bowling, a sergeant with the City of Monroe, Ohio police department. Plaintiff's complaint alleges that on May 25, 2005, he was hit and injured by defendant Bowling's police cruiser. This matter is before the Court on the parties' motions for summary judgment (Docs. 15, 17) and memoranda in support and in opposition. (Docs. 16, 19, 20, 21).

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d

1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. The Court's function is not to weigh the evidence; its duty is to determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252; *Little Caesar Enterprises, Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The following facts are undisputed for purposes of the motions for summary judgment and taken primarily from plaintiff's deposition testimony.

This case involves a high speed pursuit between plaintiff, defendant, and a Middletown, Ohio police officer the evening of May 25, 2005. At approximately 11:45 p.m., plaintiff and his girlfriend, who was a passenger in his vehicle, were driving to his sister's house in Trenton, Ohio. As plaintiff drove on Oxford State Road past the trailer park where he lived he observed two police officers pulling out of the trailer park's driveway. Plaintiff recognized one of the police officers as defendant Bowling, who drove away in the opposite direction. Moments later, Bowling pulled alongside plaintiff's vehicle with the Middletown police officer pulling directly behind plaintiff. At the time, there was an outstanding warrant for plaintiff on a burglary charge. Bowling activated his cruiser lights and instructed plaintiff to pull over. In response, plaintiff accelerated because he "realized [he] was probably wanted for something, so I'm trying to get away." (Doc. 18 at 61). Plaintiff testified he accelerated to 95 to 100 mph in an attempt to avoid apprehension.

Both parties were traveling on Oxford State Road in Trenton, a four lane road with two lanes in each direction. Initially, the speed limit on that road was 45 mph. As the road continued the speed limit changed to 35mph then to 25 mph. As plaintiff proceeded down Oxford State Road, he observed a moving train at the railroad crossing ahead and several cars waiting for the train to pass. Plaintiff slowed to 80 to 85 mph and attempted to make a left hand turn onto Baltimore Avenue, which ran parallel to the train tracks. As he was making his turn onto Baltimore, plaintiff lost control of the vehicle, spun out, and hit a railroad junction box bringing the vehicle to a stop and seriously injuring his passenger. At that point, plaintiff's

3

vehicle was facing toward Oxford State Road.

Plaintiff observed Bowling's police cruiser approach. Plaintiff exited his vehicle from the driver's side, and ran around the front end of the vehicle in the direction of a residential yard. Bowling's police cruiser drove past plaintiff's vehicle on the driver's side, turned, and hit plaintiff who was fleeing the scene on foot. Plaintiff states he was caught on something under the car and dragged by the car, over the curb of the street and into the residential yard. The cruiser then hit a trailer in the yard and came to a stop. Plaintiff extricated himself from the undercarriage of the car and proceeded to flee on foot. He eluded police for approximately six months.

Once apprehended, plaintiff was charged with felonious assault,[1] failure to comply with an order or signal of a police officer, failure to stop after an accident, and driving under suspension. He subsequently pled guilty to attempted vehicular assault, failure to stop after accident, failure to comply, and driving under suspension in the Butler County Court of Common Pleas. *See State v. Williams*, Case No. CR2005-12-2157 (Butler County C. P. April 19, 2006).

Plaintiff alleges he suffered multiple cuts, scrapes, bumps, bruises, a sprained ankle, and a torn thigh muscle as a result of the incident. He also alleges he suffered mental and emotional injuries as well.

According to plaintiff's testimony, the entire chase lasted about two minutes. The distance between the initial contact on Oxford State Road and the point of impact on Baltimore was less than 2 miles.

---

[1] Officer Bowling's report of the incident states that plaintiff swerved towards Bowling's cruiser several times in an attempt to strike it during the pursuit (Doc. 21, Exh. C), forming the basis of the felonious assault charge. (See Deposition at Tr. 169).

4

Plaintiff alleges that defendant Bowling's actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution, his equal protection rights, and his rights under state law.

**EIGHTH AMENDMENT CLAIM**

Plaintiff seeks summary judgment claiming his rights were violated under the Eighth Amendment to the United States Constitution. (Doc. 15 at 4). The Eighth Amendment's protection against cruel and unusual punishment applies only to those convicted of crimes. *Ingraham v. Wright*, 430 U.S. 651, 664- 668 (1977); *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir. 1986). Because plaintiff was not yet convicted at the time of the incident, he is not entitled to summary judgment on his Eighth Amendment claim. Therefore, defendant Bowling is entitled to summary judgment on plaintiff's section 1983 claim to the extent it is based on a violation of the Eighth Amendment.

**FOURTH AMENDMENT CLAIM**

Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment. . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[A]ll claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Id.* at 395. Thus, to establish his claim for relief for an excessive use of force under the Fourth Amendment, plaintiff must present evidence that defendant Bowling's actions constituted a "seizure" under the Fourth Amendment and that the seizure, if one occurred, was "unreasonable."

5

The Supreme Court in *Brower v. County of Inyo*, 489 U.S. 593 (1989), held:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

489 U.S. at 596-97 (emphasis in the original).

In *Campbell v. White*, 916 F.2d 421 (7th Cir. 1990), the Seventh Circuit applied *Brower* to a case where the parents of a deceased motorcyclist sued a police officer who struck and killed the motorcyclist during the course of a high-speed pursuit. The Seventh Circuit found there was no "seizure" within the meaning of the Fourth Amendment because the officer did not intend to use his vehicle to physically stop or detain the decedent:

> While it is clear that Officer White intended to stop Campbell and Miller for speeding and that White's actions caused, or contributed to, a 'termination of [Campbell's] freedom of movement,' there is no evidence whatsoever to suggest that White intended physically to stop or detain Campbell by running over him with his car in the event Campbell refused to pull over voluntarily. The collision between White and Campbell was not 'the means intentionally applied' to effect the stop, but was rather an unfortunate and regrettable accident.

916 F.2d at 423. *See also Evans v. Hightower*, 117 F.3d 1318, 1321 (11th Cir. 1997) (holding no actionable Fourth Amendment claim existed when officers accidentally struck plaintiff with patrol vehicle because plaintiff produced no evidence that officers' actions were intended to seize the plaintiff); *Kelley v. City of Southfield*, 2007 WL 1343265, *3 (E.D. Mich. 2007) (no "seizure" under the Fourth Amendment where officer did not intend to physically stop or detain decedent by running over or striking him with patrol car); *Hand v. Village of Brooklyn, Illinois*, 2005 WL 1420748, *4 (S.D. Ill. 2005) (while officer did intend to detain decedent and actions contributed

6

to termination of decedent's freedom of movement, no evidence that officer intended to physically stop or detain decedent by running over him with police cruiser and therefore no Fourth Amendment "seizure").

In the instant case, plaintiff fails to present any evidence that defendant Bowling intended to apprehend plaintiff by hitting him with the police cruiser. Because the "seizure" element of plaintiff's Fourth Amendment claim requires proof of intent, plaintiff must produce specific factual support for his allegation that defendant Bowling intended to stop plaintiff by colliding with him.

A review of the documents submitted by plaintiff and his deposition transcript indicate that at most, defendant Bowling was negligent and the collision was accidental. Plaintiff states, "The defendant admits that it was negligence on his part" and that "it was an accident" citing to defendant's reply memorandum in support of plaintiff's motion for summary judgment. (Doc. 21 at 4). Plaintiff's deposition testimony makes clear that he premises his lawsuit on the fact that defendant Bowling hit him with the police cruiser, regardless of the reasons therefor. Plaintiff was unable to point to any specific evidence showing that defendant Bowling intended to effect the stop of plaintiff by hitting him with the cruiser. Plaintiff denied that defendant Bowling said or did anything other than strike plaintiff with his vehicle that would lead plaintiff to believe that Bowling's actions were intentional. (Doc. 18, Pl. Deposition at Tr. 169).

Although plaintiff states there was "bad blood" between his family and defendant Bowling stemming from the divorce of plaintiff's brother and Bowling's niece, when asked for specific instances pointing to "bad blood" between himself and Bowling, plaintiff could only relate four incidents over a 13 year period which he considered "harassing:" (1) when he was 18

7

years old, he turned himself into the police on an outstanding charge and was allegedly pushed against a car by Bowling–an incident plaintiff could not confirm was based on Bowling's animosity toward plaintiff (Tr. 156); (2) an incident where plaintiff was stopped for a "bogus" missing license plate light for which plaintiff was ultimately charged with possession of marijuana (Tr. 159, 165-166); (3) an incident where Bowling responded to a complaint from plaintiff's neighbors that plaintiff was riding his dirt bike and disturbing the peace (Tr. 166); and (4) an incident where Bowling asked plaintiff why he was riding a bicycle on the road–an incident for which plaintiff was neither searched, ticketed, nor arrested, but merely questioned. (Tr. 167-168). A rational jury could not conclude from this evidence that Bowling harbored a sufficient amount of ill will toward plaintiff such that the jury could reasonably infer Bowling intentionally hit plaintiff with his police cruiser. Plaintiff's deposition testimony as a whole makes clear that his conclusion of "bad blood" stems from the single fact that Bowling hit him with his cruiser. (Deposition at p. 155: "He hit me with his cruiser the night of the chase, so there had to be bad blood before that."). Plaintiff testified:

> I mean, I don't know what went through Bowling's mind the night he hit me. I'm not a mind reader or whatever. Regardless, put aside the past bias relationship, set that aside, he hit me with his cruiser. You know what I mean? Proving anything else outside of that is irrelevant to the fact that, you know, I filed my suit because you put me in fear for my life.

(Deposition at p. 180).

Finally, plaintiff cites to defendant Bowling's police report which indicates he was able to steer around plaintiff's stopped vehicle. (Deposition Tr. 176).[2] Plaintiff concludes that Bowling

---

[2]The police report states in relevant part:

The suspect JASON WILLIAMS then exited the driver[']s side of the vehicle and

8

had control over his cruiser but failed to maintain a safe distance when he then hit plaintiff. *Id.* Contrary to plaintiff's conclusion, this evidence shows only negligence on the part of Bowling and not that Bowling intended that his cruiser hit plaintiff. Plaintiff admitted that he prompted the high speed chase with police by failing to pull over when signaled by Officer Bowling. The high speed pursuit through a residential area reached speeds of up to 100 miles per hour and resulted in a crash and serious injury of plaintiff's passenger. Immediately following the crash, plaintiff continued in his effort to elude police by exiting his vehicle and running around his vehicle. Officer Bowling was able to maneuver around plaintiff's vehicle instead of striking it. Although plaintiff was struck by the cruiser as a result of that maneuver, in the context of the rapidly unfolding events set forth above this is not evidence that Bowling intended to apprehend plaintiff by striking him with his police cruiser. The act of being struck by Bowling's cruiser was not part of a "seizure" but rather "the accidental effect[] of otherwise lawful governmental conduct." *Brower,* 489 U.S. at 596.

Viewing the record in the light most favorable to plaintiff, there is no basis for a reasonable jury to conclude that the collision between the plaintiff and defendant Bowling's cruiser was the means intended by Bowling to end the pursuit. In the absence of evidence of such intent, defendant Bowling's actions did not constitute a "seizure" for Fourth Amendment purposes. To the extent the collision was the result of negligence, negligence alone is not a

---

began running from the crash, I was able to steer around the crash and went over the curb, where WILLIAMS slipped in front of my cruiser causing me to strike him and then I struck a trailer containing (2) sea doo type watercrafts, pushing it into an enclosed car hauler trailer, WILLIAMS was able to get up and run with several other Officers in foot pursuit.

(Doc. 21, Exh. C).

9

"seizure" for Fourth Amendment purposes. *See Campbell*, 916 F.2d at 422-423. Plaintiff therefore fails to establish an essential element of his Fourth Amendment claim against defendant Bowling and is not entitled to summary judgment.

**FOURTEENTH AMENDMENT CLAIM**

"[W]here there is no search or seizure, the Supreme Court has held that the substantive component of the Fourteenth Amendment's due process clause is the most appropriate lens with which to view an excessive force claim." *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)). The substantive aspect of the Due Process Clause has been evoked to protect persons from governmental conduct so arbitrary, egregious and shocking that it is impermissible regardless of any procedural safeguards provided. *Lewis*, 523 U.S. at 845. "The test applied by the Supreme Court to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct 'shocks the conscience.'" *Darrah*, 255 F.3d at 306 (citing *Lewis*, 523 U.S. at 846).

In *Lewis*, a high speed pursuit of a motorcyclist by police resulted in the death of the motorcycle's passenger. The Supreme Court concluded that the actions of the police did not "shock the conscience" under the circumstances presented:

> [W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed. Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.

10

*Id.* at 853-54. Under "such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836.

Here, plaintiff fails to present any evidence that defendant Bowling's actions constituted a deliberate decision to harm plaintiff with his motor vehicle. Plaintiff's conclusory allegations to the contrary are insufficient to establish that defendant Bowling's actions were unrelated to the legitimate objective of apprehending plaintiff or shock the conscience of the Court. Therefore, plaintiff fails to establish his Fourteenth Amendment claim. Summary judgment should be granted for defendant Bowling on this claim.

## EQUAL PROTECTION CLAIM

Plaintiff also fails to establish an equal protection claim. In general, the Equal Protection Clause requires that "all persons similarly situated should be treated alike." *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). The guarantee of equal protection "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail on a § 1983 action for a violation of equal protection, plaintiff must show intentional discrimination because of membership in a particular class or group singled out for discriminatory treatment, not merely that he was treated unfairly from an individual perspective. *See Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990); *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986). Plaintiff's equal protection claim fails as a matter of law because plaintiff has alleged no facts

11

nor presented any evidence supporting the conclusion that defendant Bowling intentionally discriminated against him because of membership in a protected class or suspect classification. *City of Cleburne,* 473 U.S. at 440; *Joyce,* 783 F.2d at 57. Thus, summary judgment should be granted for defendant Bowling on plaintiff's equal protection claim.

## STATE LAW CLAIMS

Since the Court recommends that summary judgment be granted for defendant Bowling and against plaintiff on all of plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. Once federal claims have been dismissed prior to trial and the Court lacks federal jurisdiction over any federal issues, the district court should dismiss supplemental state law claims without prejudice. *See Bigelow v. Michigan Dept. of Natural Resources,* 970 F.2d 154, 160 (6th Cir. 1992); *Whittington v. Milby,* 928 F.2d 188, 194 (6th Cir.), *cert. denied,* 502 U.S. 883 (1991).

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment (Doc. 15) be **DENIED**.

2. Defendant's motion for summary judgment (Doc. 17) be **GRANTED.**

3. Plaintiff's state law claims be dismissed without prejudice.

Date: 7/25/08

Timothy S. Hogan
United States Magistrate Judge

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JASON WILLIAMS,
Plaintiff

vs

Case No. 1:07-cv-146

Barrett, J.
Hogan, M.J.

JEFF BOWLING,
Defendant

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br>Jason Williams<br>525-64b<br>Noble Corr. Inst.<br>15708 McConnelsville Road<br>Caldwell, OH 43724 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7007 0710 0000 8130 4884 | |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540 |

1:07cv146 Doc. 29